# EXHIBIT A

FILED
12/10/2020 1:54 PM
2020LM000299

Lori Grubbs
Clerk of the Circuit Court
DeKalb County, Illinois

## IN THE CIRCUIT COURT FOR THE TWENTY-THIRD JUDICIAL CIRCUIT
## DEKALB COUNTY, ILLINOIS

JOANNE KURIA, )
)
          *Plaintiff*, )
)
v. ) No.
)
ROZLIN FINANCIAL GROUP INC., and ) 2020LM000299
WILLIAM MARSHALL, d/b/a "SHOW )
OFF FITNESS," )
)
          *Defendants*. )

**NOTICE**
BY ORDER OF COURT THIS CASE IS HEREBY SET FOR CASE MANAGEMENT CONFERENCE TO BE CONDUCTED AT THE DeKALB COUNTY COURTHOUSE, SYCAMORE, IL IN ACCORDANCE WITH SUPREME COURT RULE 213 BEFORE JUDGE Waller ON 3/8/21 AT 915am
FAILURE TO APPEAR MAY RESULT IN THE CASE BEING DISMISSED OR AN ORDER OF DEFAULT BEING ENTERED

### VERIFIED COMPLAINT

Plaintiff JOANNE KURIA ("Plaintiff"), by and through her undersigned counsel, hereby respectfully complains and alleges against Defendants, ROZLIN FINANCIAL GROUP INC. ("RFGI") and WILLIAM MARSHALL d/b/a "Show Off Fitness," as follows:

### GENERAL ALLEGATIONS COMMON TO ALL COUNTS

1. Plaintiff is a natural person and resident of the State of Minnesota.

2. On or about November 30, 2018, Plaintiff entered into a written contract for personal training services with William Marshall ("Marshall"). *See* "Contract," a true and accurate copy of which is attached hereto as Exhibit A.

3. The contract was an adhesion document with boilerplate language identical or substantially similar to all other contracts used by Marshall for personal training services.

4. Plaintiff had found Marshall on "Thumbtack," a social media service.

5. Using the site's messaging app, Marshall informed Plaintiff that the sessions he offered were $40 per hour.

6. In the contract, however, Marshall indicated that sessions were $40 per half hour.

7. Plaintiff then informed Marshall that she wanted to do a one-month trial given the price was higher than he had advertised.

8. As a result, Plaintiff and Marshall negotiated an addendum to the adhesion contract, contained on the final page.

9. That addendum provision expressly permitted Plaintiff to terminate the contract after one month: "If client is not satisfied after a 30 day period, there will be a full cancellation of the agreement."

10. Plaintiff duly and timely cancelled the agreement as provided by this addendum.

11. Marshall acknowledged that cancellation both in person and in writing.

12. In or around January 2019, Marshall charged Plaintiff's credit card for one thousand ninety-two dollars ($1,092).

13. In response, Plaintiff called, texted, and/or emailed Marshall requesting an explanation.

14. Marshall informed Plaintiff that he was charging her for the remainder of the contract, notwithstanding the termination clause in the agreement.

15. Marshall then stopped replying to Plaintiff's questions.

16. Plaintiff disputed the charge with her credit card company in writing.

17. The credit card company contacted Marshall, then ruled in Plaintiff's favor on the charge.

18. In or around 2020, Marshall hired RFGI to collect $2,070 from Plaintiff.

19. That $2,070 is more than the total amount owed under the contract, even had Plaintiff not cancelled it.

20. The original contract provided for a six-month term, with two $40 half-hour sessions per bi-weekly billing cycle.

21. In other words, the total amount due under the contract was $960.

22. Moreover, Plaintiff and Marshall never met bi-weekly.

23. Marshall agreed to meet Plaintiff weekly during the 30-day trial period, because Plaintiff was also considering other trainers.

24. On information and belief, RFGI had a copy of the contract when they began collection efforts against Plaintiff.

25. RFGI is an Illinois corporation with its primary offices located in Sycamore, Illinois.

26. On information and belief, Marshall signed a written agreement with RFGI authorizing RFGI to collect on the contract.

27. That agreement with RFGI is governed by Illinois law.

28. On or about November 10, 2020, Plaintiff received a "Collections Notice" from RFGI. *See* "Notice," attached hereto as Exhibit B.

29. That notice stated that a "**<u>negative mark reflecting on your credit record</u>**" (boldface and underline original) would be submitted to Plaintiff's credit unless she paid the $2,070 demanded by RFGI and Marshall.

30. That notice did not include that Plaintiff had disputed the debt.

## COUNT I – VIOLATIONS OF 15 U.S.C. 1692f(1)
### *Against RFGI*

31. Plaintiff restates and re-alleges paragraphs 1-30 of this Complaint as if fully set forth herein.

32. The people of the United States, by and through their duly elected Congress, enacted a statute codified at 15 U.S.C. 1692a *et seq.* and commonly referred to as the Fair Debt Collection Practices Act ("FDCPA").

33. The FDCPA was in effect at all times herein relevant.

34. At all times herein relevant, RFGI was and is a "debt collector" as that term is defined by 15 U.S.C. 1692a(6).

35. Pursuant to 15 U.S.C. 1692f(1), "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

36. RFGI violated this statute by one or more of the following acts and/or omissions:

    a. Attempting to collect $2,070 on a contract with a total value of $960;

    b. Attempting to collect $2,070 that Plaintiff did not owe, because she had cancelled the contract pursuant to the addendum;

    c. Attempting to collect $2,070, which was $978 more than what Marshall stated in January 2019 was the remaining charge for the contract;

    d. Other acts and/or omissions as set forth herein.

37. Pursuant to 15 U.S.C. 1692k, "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—(1) any actual damage sustained by such person as a result of such failure; **(2) (A)** in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or **(B)** in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual

recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and **(3)** in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court."

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in her favor and against Defendants in an amount to be proven at trial but not less than $1,000 per violation, plus costs, attorney fees, and whatever additional relief this Court deems appropriate and just under the circumstances.

### COUNT II – VIOLATIONS OF 15 U.S.C. 1692e
*Against RFGI*

38. Plaintiff restates and re-alleges paragraphs 1-37 of this Complaint as if fully set forth herein.

39. Pursuant to 15 U.S.C. 1692e of the FDCPA,

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> * * *
> **(2)** The false representation of—
> **(A)** the character, amount, or legal status of any debt; or
> **(B)** any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
> * * *
> **(8)** Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

40. RFGI violated this statute by one or more of the following acts and/or omissions:

   (a) Falsely representing the amount of the debt as $2,070, when in fact the Plaintiff had duly cancelled the contract on which the debt was based;

(b) Falsely representing that Plaintiff owed $2,070 on a contract with a total value of $960;

(c) Falsely representing that the legal status of the debt was collectible;

(d) Failing to communicate that Plaintiff had disputed the debt with both the creditor and the credit card company;

(e) Other acts and/or omissions as set forth herein.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in her favor and against Defendants in an amount to be proven at trial but not less than $1,000 per violation, plus costs, attorney fees, and whatever additional relief this Court deems appropriate and just under the circumstances.

### COUNT III – VIOLATIONS OF THE MINNESOTA PREVENTION OF CONSUMER FRAUD ACT
*Against Marshall*

41. Plaintiff restates and realleges paragraphs 1-40 of this Complaint as if fully set forth herein.

42. The people of the State of Minnesota, by and through their popularly elected legislature, enacted a statute codified at Section 325F.70, and commonly referred to as the Illinois Prevention of Consumer Fraud Act ("PCFA").

43. Pursuant to the PCFA, "The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided in section 325F.70."

44. Pursuant to Section 8.31, Subdivision 3a, "In addition to the remedies otherwise provided by law, any person injured by a violation of [the PCFA] may bring a civil action and recover

damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the court. The court may, as appropriate, enter a consent judgment or decree without the finding of illegality."

45. Unfair as well as deceptive practices are prohibited by the PCFA.

46. Marshall violated this statute by one or more of the following acts and/or omissions:

   a. Lying about his rates to Plaintiff;

   b. Charging Plaintiff $1092 on a contract worth $960;

   c. Attempting to collect $2070 on a contract worth $960;

   d. Falsely stating that he had cancelled the contract;

   e. Other acts and/or omissions as set forth herein.

47. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages, including without limitation monies expended on counsel, and emotional distress.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in her favor and against Defendants in an amount to be proven at trial but not less than $2,070, plus costs, attorney fees, and whatever additional relief this Court deems appropriate and just under the circumstances.

### COUNT IV – VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

48. Plaintiff restates and re-alleges paragraphs 1-47 of this Complaint as if fully set forth herein.

49. By retaining an Illinois debt collector, Defendant submitted to Illinois law and jurisdiction.

50. The people of the State of Illinois, by and through their popularly elected legislature, enacted a statute codified at 815 ILCS 505/1 *et seq.*, and commonly referred to as the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA").

51. ICFA was in effect at all times herein relevant.

52. Pursuant to ICFA, unfair as well as deceptive business practices are prohibited.

53. Defendant violated ICFA by hiring an Illinois debt collector to harass Plaintiff for a debt he knew she did not owe.

54. Defendant violated ICFA by hiring an Illinois debt collector to collect a debt he knew she did not owe.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in her favor and against Defendants in an amount to be proven at trial but not less than $2,070, plus costs, attorney fees, and whatever additional relief this Court deems appropriate and just under the circumstances.

Respectfully submitted,
JOANNE KURIA

/s/ Sheryl Melanie Ring
By one of her attorneys,
Sheryl Ring, Esq.

Sheryl Ring, Esq. #6311043
518 South Route 31, Suite 113
McHenry, Illinois 60050
(833) 474-3795
sheryl@sherylringlaw.com

I, Joanne Kuria, hereby state and affirm pursuant to Section 1-109 of the Illinois Code of Civil Procedure that the facts set forth herein are true, correct, and complete to the best of my knowledge and belief, except as to those statements made upon information and belief, and as to those statements I verily believe them to be true.

Dated: December 10, 2020